## HUBBARD & *al.* vs. REMICK & *al.*

A. and B. levied on the life estate of the husband, the fee being in the wife. Before the expiration of a year from the levy, the husband and wife united in conveying the fee to A. and B. to a part of the land levied on, and A. and B. thereupon conveyed their interest in the residue, to C. D. the father of the husband : — *Held* that, this did not operate as a *discharge* of the *prior* levy of A. and B., so as to let in, and perfect the title under a subsequent levy on the same land.

*Held* also, that the conveyance to C. D. of the reversionary interest of the wife, though without consideration, was no fraud upon the creditors of the husband.

THIS was a writ of entry, brought by *Aaron Hubbard* and *John Garvin* against *John Remick* and *Edward B. Remick.* The general issue was pleaded, with a brief statement. The demandants derived title to the demanded premises, by deed from *J. B. H. Odiorne,* who had acquired his title, by the levy of an execution against *Edward B. Remick,* on his life estate in the premises, the fee then being in his wife.

On the part of the defendants, it appeared that, *John T. Paine* and *John Trafton* had also levied on the interest of *Edward B. Remick,* in certain real estate, which included the demanded premises, their attachment being *prior* to *Odiorne's.*

Before the expiration of a year from the time of *Paine* and

*Trafton's* levy, *Edward B. Remick* and his wife joined in a conveyance of the fee to *Paine* and *Trafton*, of a portion of the lands levied on by them, but other than that demanded in this action.    Whereupon, *Paine* and *Trafton* conveyed their interest in the residue, it being the demanded premises, to *John Remick*, the father of *Edward.*

*Paine,* on being called as a witness, testified that, the only consideration for the conveyance to *John Remick,* was the conveyance of the reversionary interest of the wife to himself and *Trafton,* and that their judgment and levy was thereby discharged within the year.

There was other testimony introduced tending to show that, *John Remick* paid to *Edward B. Remick* the value of the estate conveyed to him by *Paine* and *Trafton,* and testimony tending to show the contrary.

The question submitted to the jury was, whether the transaction between *Edward B.* and *John Remick* was *bona fide,* and the conveyance for a full and valuable consideration ; or whether it was for the purpose of securing the property in *John Remick,* for the benefit of *Edward B. Remick,* and to secrete it from attachment by his creditors ; and the jury were directed to return their verdict for the defendants in case they found the transaction between *Edward B.* and *John Remick* to have been fair and honest, otherwise for the demandants.    The verdict was for the demandants.

If in the opinion of the whole Court, the demandants ought not to retain their verdict, it was to be set aside, and a new trial granted ; otherwise judgment was to be rendered thereon.

*J.* and *E. Shepley,* for the defendants, maintained the following positions.

1. That there was nothing illegal or fraudulent, as to creditors, in the conveyances of *Mrs. Remick* to *Paine* and *Trafton,* and of the latter to *John Remick.*

2. That the case did not find any *redemption* of the *Paine* and *Trafton* levies.    Neither of the parties *intending* such an effect by what they did.

3. That if the conveyances were fraudulent, still the demand-

ants were not entitled to prevail. The deeds being void, would leave the life estate in *Paine* and *Trafton*, and the reversion in *Mrs. Remick.* In a writ of entry, it is a good defence to show title in a stranger.

These positions they supported by reasoning at length, and under the first, cited the cases of *Bullard v. Briggs,* 7 *Pick.* 533 ; and *Wilson v. Ayer,* 7 *Greenl.* 208. And under the third, the case of *Wolcott & al. v. Knight & al.* 6 *Mass.* 419.

*D. Goodenow* and *N. D. Appleton,* for the demandants.

1. *Odiorne,* by his attachment and levy regularly made, acquired all the title of *Edward B. Remick,* in the premises. And the plaintiffs have his title. He was in the actual seizin and possession of the premises. *Maine stat. ch.* 60, *sec.* 27, 30 ; *Gore v. Brazier,* 3 *Mass.* 523.

The claim of *Odiorne,* by virtue of his extent, was good against all persons except *Paine* and *Trafton* ; and even against them, after their levies were satisfied. And the case finds that these levies were satisfied within the year.

*Odiorne's* levy, gave him at the time, the rightful and legal seizin and possession of the land. *Paine* and *Trafton,* it is true, had the first attachment, but they might never have obtained judgment, or levied, or might have lost their attachment before levy.

The subsequent levy of *Paine* and *Trafton,* was a mere charge or incumbrance on the land, which when removed, left *Odiorne's* extent in full force, and is analogous to the case of *Barber v. Root,* 10 *Mass.* 260; also *Clark v. Wentworth,* 6 *Greenl.* 259.

2. *Edward B. Remick* having satisfied the levies of *Paine* and *Trafton,* they had nothing to convey ; their deed, therefore, to *John Remick* was ineffectual to defeat the plaintiffs' title. *Ricker v. Ham & al.* 14 *Mass.* 137.

But if any thing passed by this deed, as between the parties to the transaction, *John Remick* paying nothing, and it being for the benefit of *Edward B. Remick,* as the jury have found, it enured to the benefit of *Odiorne* upon the principle of *estoppel. Odiorne's* rights were the same under the extent as if he

had received a deed from *Edward B. Remick;* and the extent of an execution raises an *estoppel,* as much as if the conveyance were by deed. *Fairbanks & al. v. Williamson,* 7 *Greenl.* 96; *Varnum v. Abbot & al.* 12 *Mass.* 474; *Williams v. Gray,* 3 *Greenl.* 267.

3. The deeds from *Paine* and *Trafton* to *John Remick,* as far as the transaction related to the latter and *Edward B. Remick,* was fraudulent and utterly void. 13 *Eliz. ch.* 5; *Meserve v. Dyer,* 4 *Greenl.* 52; *Howe v. Ward,* 4 *Greenl.* 195; *Clark v. Wentworth,* 6 *Greenl.* 259; *Varnum v. Abbot & al.* 12 *Mass.* 474; *Goodwin v. Hubbard & al.* 15 *Mass.* 210.

The question whether it was an estate in trust for *Mrs. Remick* was made at the trial, or not. If it was made, it was a question of fact and is found by the verdict against the defendants. If it was not made at the trial, it was the fault of the defendants, and cannot now be made. *Tinkham v. Arnold,* 3 *Greenl.* 120; *Allen v. Sayward,* 5 *Greenl.* 232.

The opinion of the Court was delivered at the ensuing *April* term in this County, by

WESTON, J. — The attachment of *Paine* and *Trafton,* having been made earlier than that of the demandants, the levy of the former has the priority; and if the title thence derived was not defeated by payment within the year of the amount due to them, there could be no interest, upon which the levy of the demandants could operate. And we are satisfied from the facts, that there was no such payment.

*Paine* and *Trafton* severally conveyed a part of the life estate of the husband, derived from their levies, for the reversionary interest of *Mrs. Remick* in the residue. This interest was not liable to be taken by his creditors. It was subject to her disposal; her husband joining in her conveyance, to give it legal effect. It did not concern his creditors, how the consideration was appropriated. She was at liberty to bestow it as a gratuity on a friend; and no person, to whom her husband might be indebted, would be thereby defrauded. If she thought proper to have the life estate in part of the land levied upon, which was given for her reversion in another part of the estate, conveyed

to a third person, the creditors of her husband were not injured. Had it been conveyed directly to her, the freehold would, by operation of law, have again become her husband's, of which his other creditors might have availed themselves, at her expense. The conveyance to a third person protected the land from being thus appropriated; and we see nothing in the transaction, tending to defraud his creditors of any thing, of which by law they had a right to avail themselves. Whether she was to derive any benefit or not from this arrangement, did not concern them. Whether she caused the property to be conveyed to *John Remick* for his own use, whether he made any declaration of trust for her benefit, or whether she confided altogether to his sense of what might be right and equitable, are questions between them, for which neither is answerable to others. No legal right of the husband was put out of the reach of creditors. His life estate, according to its appraised value, had been once appropriated to the payment of his debts; and that was all which his creditors could legally or equitably claim. To hold the arrangement, made between the parties, a payment and extinguishment of the levies of *Paine* and *Trafton*, would defeat their lawful intentions. What was done, was in substance an exchange of the life estate in a part of the land acquired by their levies, for a fee in the residue. The demandants were not prejudiced. Their levy was superseded before; and their condition would not have been improved, if these transactions had not taken place, which it is very manifest were not intended for their benefit.

The authorities, cited for the demandants, sufficiently show that if the levies of *Paine* and *Trafton* had been extinguished by payment, their title would have been sustained; but for the reasons before stated, which are also supported by the case of *Wilson v. Ayer*, cited in the argument, we are of opinion that such was not the legal effect of what was done between the parties.

There being nothing in the facts appearing in the case, tending to defraud the creditors of *Edward B. Remick*, the verdict, returned for the demandants, is set aside, and a new trial granted.